U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 NOV -6  PM 4: 35

CLERK

BY ⟨signature⟩
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JAMES R. BARNES, *Creditor and Equity Holder*, <br><br> Appellant, <br><br> v. <br><br> 309 RTE 100 DOVER LLC, AD HOC COMMITTEE OF UNSECURED CREDITOR/MEMBERS OF HERMITAGE INN REAL ESTATE HOLDING COMPANY LLC AND THE HERMITAGE CLUB, LLC, ANA CLADERA, AW REALTY LLC, BARNSTORMER SUMMIT LIFT, LLC, BERKSHIRE BANK, BETTINA BOSMA, BOBBI RESEK, BOUYNE USA, INC., BOXER BLAKE & MOORE PLLC, BOYNE USA, INC., BRUCE THEUERKAUF, CAROL H. BUTLER TRUST, CHAD BULLOCK, CHARLES COLLINS, COLD BROOK FIRE DISTRICT, DAN SOLAZ, DEBORAH STRAWN-PERKINS, ELLIOT COOPERSTONE, FTI CONSULTING, INC., *Alan Tantleff, Receiver*, GARY ROTHSCHILD, HERMITAGE CLUB, LLC, HERMITAGE INN, LLC, HSM PARTNERS, LLC, JENNIFER GOODMAN, JOHN DURKEE, JOHN SANTANIELLO, ROBERT BALEWICZ, JOSEPH WILLEN, LAKELAND BANK, N.A., LOUIS CHENEVART, LPV, 15-HERMITAGE, LLC, MARK BRETT, NEC FINANCIAL SERVICES, LLC, NEUBERT, PEPE & MONTEITH, P.C., NICOLE BODOH, OBUCHOWSKI LAW OFFICE, PLIMPTON EXCAVATING LLC, QR HOSPITALITY, RAINMAKER MOUNTAIN, LLC, REINHART FOODSERVICE, L.L.C., RESTRUCTURED OPPORTUNITY | Case No. 2:20-cv-00045 |

| | |
|---|---|
| INVESTORS, INC., ROB KRZANOWSKI, ROSE STEWART DICKSON, RTM CAPITAL PARTNERS, INC., SETH GOODMAN, SHAUN P. GOLDEN, SUBURBAN PROPANE, L.P., TERRY PERKINS, TFT HOLDINGS, LLC, THOMAS DOYLE, WILMINGTON, TOWN OF, TYLER DICKSON, U.S. TRUSTEE, VERMONT DEPARTMENT OF TAXES, WILLIAMS SCOTSMAN INC., MATTHEW CURTIS, HERMITAGE INN REAL ESTATE HOLDING COMPANY, LLC, and HERMITAGE MEMBER GROUP, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Appellees. | ) ) |
| RAYMOND J. OBUCHOWSKI, | ) ) |
| Chapter 7 Trustee. | ) |

**OPINION AND ORDER**
**GRANTING APPELLEES HERMITAGE MEMBER GROUP, INC.'S,**
**BARNSTORMER SUMMIT LIFT, LLC'S, AND TRUSTEE RAYMOND J.**
**OBUCHOWSKI'S MOTION TO DISMISS**
(Docs. 5, 9, & 10)

In these consolidated appeals, James R. Barnes ("Appellant"), an unsecured creditor of and former equity holder in an 838-acre ski and golf resort located in the towns of Wilmington and Dover, Vermont (the "Club"), appeals two Orders issued by the United States Bankruptcy Court for the District of Vermont (the "Bankruptcy Court"), Case No. 19-10214: (1) a March 19, 2020 Order[1] denying Appellant's emergency motion to postpone the March 20, 2020 sale hearing regarding the Club, Dkt. No. 437 (the "Delayed Relief Order"); and (2) an April 1, 2020 Order authorizing Appellee Trustee Raymond J. Obuchowski (the "Trustee") to sell the Club to Appellee Hermitage Member Group, Inc. (the "Member Group"), Dkt. No. 462 (the "Sale Order").

---

[1] The Bankruptcy Court orally denied Appellant's motion to postpone the sale on March 18, 2020. Docket No. 437 is the March 19, 2020 written order memorializing the bench ruling. *See* Doc. 2-76 at 5.

2

Appellant frames the issue on appeal as follows:

> Did the Bankruptcy Court err in approving the sale of all or substantially all of the Debtors' assets and related relief under 11 U.S.C. §§[ ]105(a) and 363 to Hermitage Club Members Group, Inc. and, as backup bidders, Rainmaker Mountain LLC and Boyce USA, Inc.?

(Doc. 5 at 7, ¶ 30.)

On June 8, 2020, the Member Group moved to dismiss both appeals for mootness because the authorized sale has now taken place, rendering this matter moot and the court without jurisdiction to consider the appeals pursuant to Section 363(m) of the United States Bankruptcy Code, 11 U.S.C. § 363(m). (Doc. 5.) Appellee Barnstormer Summit Lift, LLC ("Barnstormer") filed a memorandum in support of the motion to dismiss on June 19, 2020 (Doc. 9), and the Trustee filed a memorandum in support and joinder on June 23, 2020. (Doc. 10.)

On July 8, 2020, Appellant opposed the motion to dismiss, arguing that the sale was not made to a good faith purchaser and that the Bankruptcy Court clearly erred in finding the Member Group was not an "insider." The Member Group, Barnstormer, and the Trustee replied on July 20, 2020, at which time the court took the pending motion under advisement.

Appellant is represented by W.E. Whittington, Esq. The Member Group is represented by Peter J. Haley, Esq., and Andrew C. Helman, Esq. Barnstormer is represented by David N. Dunn, Esq. The Trustee represents himself.

## I. Factual and Procedural Background.

Hermitage Inn Real Estate Holding Company, LLC, and Hermitage Club, LLC (the "Debtors") were the owners of the Club, a private ski and golf resort which sold membership units to families granting them rights to use portions of the Club. Appellant is the founder of and a former equity holder in the Club, as well as a guarantor of debt owed by the Debtors. Appellant had unsecured claims amounting to over $58,000,000. Appellant represents that he is "the sole equity owner of the Debtors[.]" (Doc. 15 at 4, ¶ 5.)

On March 20, 2018, the Vermont Department of Taxes ordered the Club to shut

down for failure to pay room, sales, and meal taxes. Thereafter, first mortgage holder Berkshire Bank commenced an action in Vermont Superior Court, Windham County, and on May 18, 2018, the Vermont Superior Court appointed a state court receiver over the Club. Approximately one year later on May 22, 2019, certain creditors filed involuntary bankruptcy petitions in the Bankruptcy Court. On May 28, 2019, the Debtors filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the District of Connecticut. On May 31, 2019, the Bankruptcy Court issued an order allowing the state-court receivership to remain in place. Following an evidentiary hearing, the Bankruptcy Court determined Vermont was the proper venue for all bankruptcy proceedings and entered an order to that effect on June 19, 2019. On July 30, 2019, the Bankruptcy Court converted the Debtors' bankruptcy cases to Chapter 7 cases, terminated the role of the state-court receiver, and appointed the Trustee as a Chapter 7 Trustee.

On January 14, 2020, the Trustee filed motions (the "Sales Motions") seeking the entry of bidding procedures in connection with the proposed sale of the Club in two lots: (1) the Dopplemayr Barnstormer Chair Lift (the "Chairlift"); and (2) real estate and all other assets owned by the Debtors (the "Real Estate"). The Bankruptcy Court held a hearing on the motions, which Appellant attended. Thereafter, the Bankruptcy Court entered an Order establishing bidding procedures for the sale of the Chairlift and the Real Estate on February 20, 2020 (the "Bidding Procedures Order"). The Bankruptcy Court also approved the sale of the Chairlift and the Real Estate under "stalking horse"[2] bids to Boyne USA and Rainmaker Mountain LLC, respectively. The Trustee provided notice to Appellant and others of the Bidding Procedures Order which established March 16, 2020 as the deadline to object to the Sales Motions or make a qualified bid. The Trustee further provided notice that March 20, 2020 would be the date of the sale hearing. No objections were filed to the Sales Motions, and the Member Group made a qualified combined bid for the Chairlift and Real Estate.

---

[2] "A 'stalking horse' contract is a first, favorable bid strategically solicited by the bankrupt company to prevent low-ball offers." *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 239 n.3 (2d Cir. 2010).

4

On March 13, 2020, the Governor of Vermont and President of the United States declared states of emergency in response to the novel coronavirus ("COVID-19") pandemic. On March 16, 2020, Appellant filed an emergency motion to postpone the March 20, 2020 sale hearing, arguing that a sale during the COVID-19 pandemic would diminish the value of the Club to the detriment of the Debtors and their creditors. The Bankruptcy Court held an emergency hearing on March 18, 2020, at which it entered the Delayed Relief Order denying Appellant's motion. At the hearing, Appellant made an oral motion for stay of the entry of the Delayed Relief Order pending appeal, which the Bankruptcy Court denied. Appellant appealed the Delayed Relief Order on March 19, 2020 but sought no further relief from the Bankruptcy Court or this court.

On March 20, 2020, Debtors' assets as described in the Sales Motions were auctioned pursuant to the Bidding Procedures Order. At the conclusion of the auction, the Member Group was declared the highest and winning bidder for the Chairlift and Real Estate.

The Bankruptcy Court's Sale Order authorized the Trustee to sell the Chairlift and Real Estate to the Member Group based on the following findings of fact:

> K.   Buyer [Member Group] is a purchaser in good faith, as that term is used in the Bankruptcy Code and court decisions thereunder and is entitled to the protections of section 363(m) of the Bankruptcy Code. The terms and conditions of the Sale as set forth in the [Real Estate Asset Purchase Agreement ("REAPA")] were proposed, and agreed to by the Trustee and Buyer as parties thereto without collusion, in good faith, and from arm's-length bargaining positions. The Trustee has followed in good faith the procedures for notice and sale as set forth in the Bidding Procedures Order. Buyer is not an "insider" or "affiliate" of the Debtors (as each such term is defined in the Bankruptcy Code). Neither the Trustee nor Buyer have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the Sale and the transactions contemplated by the REAPA. Buyer is entitled to the protections afforded under section 363(m) of the Bankruptcy Code because Buyer is a good faith purchaser in that, *inter alia*: (a) Buyer participated in an open auction for the Assets and recognized that the Trustee was free to deal with any other party interested in acquiring the Assets; (b) Buyer complied with the provisions of the Bidding Procedures Order; (c) Buyer's bid was the subject of the opportunity for competitive bidding, including at the Auction;

>(d) Buyer in no way induced or caused the chapter 11 filings by the Debtors; (e) all payments to be made by Buyer in connection with the Sale have been disclosed; (f) no common identity of directors or controlling stockholders exists between Buyer and the Debtors; and (g) the negotiation and execution of the REAPA was at arm's length and in good faith.
>
>L. In the absence of a stay pending appeal, Buyer will be deemed to have acted in good faith, pursuant to section 363(m) of the Bankruptcy Code and entitled to the protections therein in closing the transactions contemplated by the REAPA after the entry of this Sale Order and in accordance with the REAPA. Furthermore, in the absence of a stay pending appeal, Buyer closing and otherwise performing after the entry of the Sale Order in accordance with the REAPA while an appeal or motion for rehearing pertaining to the Sale Order is pending shall entitle the Buyer to the protections of section 363(m) of the Bankruptcy Code in the event this Sale Order or any authorization contained herein is reversed or modified on appeal.

(Doc. 2-86 at 6-7.) Appellant maintains that he orally requested a stay of the Sale Order from the Bankruptcy Court, which was denied.

On April 15, 2020, Appellant filed a Notice of Appeal of the Sale Order but did not seek a stay of the Sale Order from this court. On May 15, 2020, the Trustee filed a Report of Sale notifying the Bankruptcy Court that the sale of the Club to the Member Group closed on May 14, 2020.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

28 U.S.C. § 158(a) vests district courts with "jurisdiction to hear appeals" from "final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158(a)(1). "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012) (citing Fed. R. Bankr. P. 8013). Although the bankruptcy court's findings of fact are not conclusive on appeal, "'the party that seeks to overturn them bears a heavy burden.'" *In re Lehman Bros. Holdings, Inc.*, 415 B.R. 77, 83 (S.D.N.Y. 2009) (quoting *In re Miner*, 299 B.R. 561, 565 (B.A.P. 2d Cir. 1999)).

A finding of fact is "clearly erroneous" when "the reviewing court on the entire

6

evidence is left with the definite and firm conviction that a mistake has been committed." *Wu Lin v. Lynch*, 813 F.3d 122, 126 (2d Cir. 2016) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)) (internal quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

### B. Whether the Court Has Jurisdiction Over the Pending Appeals.

The Member Group, Barnstormer, and the Trustee argue that the closing of the sale of the Club bars this court from exercising jurisdiction over the pending appeals because the Member Group is a good faith purchaser and the sale was not stayed pending appeal. According to the Bankruptcy Code,

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

The Second Circuit has held that § 363 "creates a rule of 'statutory mootness,' which bars appellate review of any sale authorized by 11 U.S.C. § 363(b) or (c) so long as the sale was made to a good[]faith purchaser and was not stayed pending appeal[.]" *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 247 (2d Cir. 2010) (citation omitted); *see also In re Motors Liquidation Co.*, 428 B.R. 43, 52 (S.D.N.Y. 2010) (holding appeal was "equitably moot" where appellants did not overcome "the Second Circuit's presumption that an appeal of an unstayed, substantially consummated sale order is moot") (citations omitted). This limitation on the court's jurisdiction extends not only to "the actual sale transaction" but to "the entire Sale Order[.]" *In re WestPoint Stevens, Inc.*, 600 F.3d at 248. If a sale order has not been stayed, courts "only retain authority to review challenges to the 'good faith' aspect of the sale." *Id.*; *see also In re Gucci*, 105 F.3d 837, 839 (2d Cir. 1997) ("*Gucci I*") (holding appellate jurisdiction "over an *unstayed* sale order issued by a bankruptcy court is statutorily limited to the narrow issue of whether the property

7

was sold to a good faith purchaser") (emphasis in the original).

Because the Sale Order was not stayed, the court has jurisdiction over the pending appeals only if it determines the Bankruptcy Court clearly erred in finding the Member Group was a good faith purchaser. The "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings[.]" *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) ("*Gucci II*"). It may be "lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). In determining whether a purchaser acted in good faith, the court focuses on conduct during bankruptcy proceedings, including "the purchaser's actions in preparation for and during the sale itself[,]" as opposed to the purchaser's "general business practices." *Id.*; *see also In re Advanced Contracting Sols., LLC*, 582 B.R. 285, 320 (Bankr. S.D.N.Y. 2018) (holding "the inquiry with respect to the actions of a good faith purchaser relates primarily to whether the conduct of the purchaser has had an impact on the bidding process" and "whether that conduct was intended to control the sale price or take unfair advantage of prospective bidders") (citation and internal quotation marks omitted).

Appellant argues that the Bankruptcy Court clearly erred in the Sale Order by failing "to make any factual findings regarding the insider status of the Member Group in summarily concluding that the Member Group qualifies for the protections accorded a good[]faith purchaser of a debtor's assets." (Doc. 15 at 8, ¶ 23.) Because he asserts the Member Group is in fact an insider, he contends the Bankruptcy Court should have applied a heightened standard of scrutiny to review the Member Group's purchase of the Club. In support of his claim of insider status, Appellant asserts the following:

> Notably, several individuals who spearheaded the creation of the Member Group and who continue to be involved in its management and that of Barnstormer were actively and continuously involved with the financial and operational affairs of the Debtors, pre-petition, as members of the board of managers or ad hoc committees appointed by Mr. Barnes to provide a layer of additional oversight for the Club members. These individuals have fiduciary duties as managers of the Debtor limited liability companies that

are imposed under Connecticut law. They acted in such roles while subject to extensive confidentiality and non-disclosure agreements, which they circumvented once the opportunity to grab the Hermitage Club away from Mr. Barnes presented itself to them as the businesses continued to struggle.

*Id.* at 10, ¶ 27.

The Bankruptcy Court found: (1) the Member Group participated in an open auction for the Chairlift and Real Estate; (2) the Member Group complied with the Bankruptcy Court's Bidding Procedures Order; (3) the Member Group's bid was subject to competitive bidding; (4) the Member Group did not cause the Debtors to file for bankruptcy; (5) all payments that the Member Group made in connection with the sale were disclosed to the Bankruptcy Court; (6) there is no common identity of directors or controlling stockholders between the Member Group and Debtors; and (6) the negotiation and execution of the purchase agreement between the Member Group and Trustee was made at arm's length and in good faith. These findings of fact are uncontested and are supported by the appellate record.

The Bankruptcy Court further concluded that the Member Group is "not an 'insider' or 'affiliate' of the Debtors (as each such term is defined in the Bankruptcy Code)." (Doc. 2-86 at 6.) Under 11 U.S.C. § 101(a)(31), an "insider" for a debtor corporation includes a "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor[.]" 11 U.S.C. § 101(a)(31)(B)(i)-(vi). Appellant does not identify any individuals or entities in the Member Group as having one of these enumerated relationships with the Debtors. The Member Group also is not an "insider" under a non-statutory analysis[3] because there is no evidence that the Member Group had "a relationship" with the Debtors "close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." *In re Bruno*

---

[3] "[C]ourts have identified a category of creditors, sometimes called 'non-statutory insiders,' who fall within the definition [of insiders] but outside of any of the enumerated categories." *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 395 (3d Cir. 2009).

9

*Mach. Corp.*, 435 B.R. 819, 833 (Bankr. N.D.N.Y. 2010) (quoting *Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*, 126 B.R. 63, 70 (B.A.P. 9th Cir. 1991)); *see also Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 351 (S.D.N.Y. 2013) (holding complaint failed to allege non-statutory insider relationship because allegations "do not suggest that the Goldman Lenders had a 'close' relationship with the Debtors, or that the Goldman Lenders exercised anything resembling the high level of control required for non-statutory insider status").

Appellant asserts that certain individuals "who spearheaded the creation of the Member Group" and who are involved in its and Barnstormer's management "were actively and continuously involved with the financial and operational affairs of the Debtors, pre-petition, as members of the board of managers or ad hoc committees appointed by [Appellant.]" (Doc. 15 at 10, ¶ 27.) He does not, however, further contend that these unnamed individuals were directors, officers, partners, or controlling stockholders of the Debtors. Nor does he suggest that the Member Group exerted significant influence over the Debtors' finances and operations at the time of the sale. *See In re Velo Holdings Inc.*, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012) (holding non-statutory "insiders must have at least a controlling interest in the debtor or exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets") (alteration, citation, and internal quotation marks omitted). Appellant's contention that these individuals "circumvented" their fiduciary duties "once the opportunity to grab the Hermitage Club away from [Appellant] presented itself to them[,]" (Doc. 15 at 10, ¶ 27), even if established, does not allege "fraud" in the bidding process, "collusion" between the Member Group and the Debtors, or "an attempt to take grossly unfair advantage of other bidders[,]" *Gucci II*, 126 F.3d at 390 (citation and internal quotation marks omitted), especially with the bidding safeguards established by the Bankruptcy Court.

The Member Group and the Trustee represent that they had no affiliation with each other and Berkshire Bank, the prior senior secured creditor for the Club, retained its own brokers to market the Club. The Trustee chose two unaffiliated "stalking horse"

10

bidders to set the auction price for the Chairlift and Real Estate. The Member Group was named the highest bidder only after submitting a bid pursuant to the Bidding Procedures Order and competing in an open auction. Under these circumstances, the evidence falls far short of permitting the court to find with "definite and firm conviction" that the Bankruptcy Court erred in finding the Member Group was a good faith purchaser. *See Wu Lin*, 813 F.3d at 126 (citation and internal quotation marks omitted). The Bankruptcy Court further acted within its discretion in issuing the Delayed Relief Order.

Because the Sale Order was not stayed and because the Bankruptcy Court did not clearly err in finding that the Member Group was a good faith purchaser, the court does not have jurisdiction to review the Sale Order. *See In re WestPoint Stevens, Inc.*, 600 F.3d at 253 ("[I]n the absence of a stay (or a challenge to the good[]faith aspect of the sale), section 363(m) precludes our review of the Sale Order."). As a result, the court GRANTS Appellees' motion to dismiss the appeals for lack of jurisdiction.

## CONCLUSION

For the above-stated reasons, the court GRANTS the motions to dismiss filed by the Member Group and joined by Barnstormer and the Trustee. (Docs. 5, 9, & 10.)
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 6th day of November, 2020.

Christina Reiss, District Judge
United States District Court